UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case Nos. 3:13-CR-013 JD |
| | ) | 3:13-CR-109 JD |
| DANIEL HASLAM | ) | |

## OPINION AND ORDER

Through a written plea agreement, Defendant Daniel Haslam pled guilty to three counts of a four-count Indictment and the sole count of a one-count Information. [DE 52.[1]] The Court accepted Mr. Haslam's guilty plea on December 20, 2013. [DE 77.] In light of the number and breadth of the objections to the Presentence Report, the Court bifurcated the sentencing proceedings and heard evidence needed to resolve the Guidelines disputes. [DE 72.] During the sentencing hearing, but after the Court had accepted the plea, counsel for Mr. Haslam raised the argument that the Government breached Mr. Haslam's plea agreement by offering evidence that Mr. Haslam battered and confined his then-girlfriend Laci Sample. Mr. Haslam further argued this purported breach in the briefing that followed the evidentiary portion of the sentencing hearing. [DE 84 at 3–4; DE 85 at 2, 11–12, 15–17.] He later filed a formal motion to withdraw his plea of guilty [DE 87], to which the Government has filed a response in opposition [DE 88].

On March 5, 2014, the Court held an evidentiary hearing regarding the alleged breach of the plea agreement. At the hearing, the Government and Mr. Haslam presented evidence regarding the nature and content of the plea negotiations and presented argument regarding whether the Government's conduct constituted a breach of the plea agreement.

---

[1] The Indictment was filed in case number 3:13-CR-13 and the Information was filed under a separate case number, 3:13-CR-109. Since the filing of the Information, all filings relevant to this Opinion have been duplicated in each docket. This Opinion cites to the docket entries in case number 3:13-CR-13.

For the reasons stated below, the Court **DENIES** Mr. Haslam's motion to withdraw his plea of guilty. [DE 87.]

## I. Factual Background

A plea agreement was filed on September 18, 2013. [DE 52.] In the plea, Mr. Haslam agreed to plead guilty to counts 1, 2, and 4 of the Indictment, as well as the sole count of a newly filed Information. In paragraph 9(b) of the plea agreement, Mr. Haslam admitted to the following factual basis for his plea:

> I admit that all of these facts are true:
>
> In August 2012, Daniel K. Haslam lived at 407 North Jefferson Street, Apartment #4, Converse, Indiana. At that time, Haslam had a number of completed firearm silencers and a number that were in stages of completion that he was manufacturing. There were a number of firearms in the house (several loaded rifles, a shotgun, and a revolver). One of the rifles had been modified or retrofitted so that the barrel had an attached silencer. Also in August 2012, Haslam was manufacturing and using methamphetamine. Records for pseudoephedrine purchases show that Haslam made 30 pseudoephedrine purchases in 2011 and through August 2012. Local police executed a search warrant on August 30, 2012 and discovered evidence of methamphetamine manufacturing and use, a two-camera video surveillance system, an amount of methamphetamine, ammunition, and multiple firearms and silencers. None of the silencers or firearms were registered to Haslam in the National Firearms Registration and Transfer Record.
>
> Also on August 30, 2012, surveillance of Daniel K. Haslams' [sic] residence was initiated by members of the Peru City Police Department and Indiana State Police. Haslam was seen leaving his residence and getting into a vehicle parked outside. The vehicle was driven by a female, Andrea Hahn. The officers followed the vehicle that Haslam was a passenger in for a short distance and then initiated a traffic stop. Haslam was found to be in possession of a silver Beretta .22 caliber pistol, loaded with 8 rounds of ammunition. This pistol had a modified attachment to the barrel, which was threaded, and allowed for a silencer to be secured to the

> firearm. This pistol and the firearms in the residence were possessed by Haslam in furtherance of his drug trafficking crimes.

[DE 52 at 3.] The plea agreement correctly advised Mr. Haslam of the maximum potential penalties he faced as a result of his guilty plea and included a waiver of Mr. Haslam's right to appeal or contest his conviction. [DE 52 at 4.] The plea agreement also contained a binding term that, if the Court accepted the plea agreement, Mr. Haslam must be sentenced to a total sentence of imprisonment of not less than 15 years. [DE 52 at 5.] Both parties remained free to argue for any sentence at or above that minimum term of imprisonment. [*Id.*]

The plea agreement also contained the following paragraphs, relevant to the issues raised by Mr. Haslam's motion to withdraw his plea of guilty:

> (e) I understand that the Court, based upon input from me, my attorney, and the government as well as an investigation by the United States Probation Office, will determine the guideline range to be applied at my sentencing;
>
> . . .
>
> (g) The defendant fully understands that the United States of America has reserved the right to tell the Sentencing Court the good things about him, and the bad things about him, and has reserved the right to fully inform the Court of the nature and extent of his offense(s);
>
> . . .
>
> (l) Other than what is contained in this plea agreement, no predictions, promises, or representations have been made to me as to the specific sentence that will be imposed or any other matter.

[DE 52 at 4–5.]

The plea agreement was referred to Magistrate Judge Nuechterlein to conduct a change of plea hearing on the Indictment and a plea hearing on the Information. [DE 54.] During the

hearing, the Magistrate Judge confirmed that there were not any promises made to Mr. Haslam that were not contained within the written plea agreement. [DE 92 at 18:23–19:1.] The Magistrate Judge issued a Report and Recommendation, recommending that the Court accept Mr. Haslam's plea of guilty. [DE 59.] No objections were filed to the Report and Recommendation. However, given the binding nature of the plea agreement, the Court deferred acceptance until the sentencing hearing began, having then had an opportunity to review the Presentence Report. During the December 20 sentencing hearing, the Court adopted the Report and Recommendation, accepted the plea agreement, and accepted Mr. Haslam's plea of guilty. [DE 77.]

During the March 5 hearing, the parties introduced evidence regarding the nature and content of the negotiations that produced the written plea agreement. The Government objected that admission of this extrinsic evidence regarding the plea negotiations would violate the parol evidence rule. The Court took that objection under advisement, conditioned the admission of the evidence on the Court's conducting further research on the issue, and allowed both counsel to argue the evidence in the event that the Court decided to consider it. Now having conducted further research, as detailed below, the Court does admit and consider the extrinsic evidence, which is summarized here.

Mr. Haslam's counsel Arvil Howe first appeared in this case on June 6, 2013.[2] [DE 31.] That same day, Assistant United States Attorney Donald Schmid emailed to Mr. Howe a copy of the current plea offer. [Gov't Ex. 1.] The draft plea agreement offered to dismiss Count 3 of the Indictment (which would have subjected the Defendant to a thirty-year mandatory minimum sentence); in its place, the Government would bring an Information which charged Mr. Haslam

---

[2] Mr. Howe was the third retained attorney to appear for Mr. Haslam during the course of these proceedings.

with a violation of section 924(c) that did not include a reference to silencers, but did include an admission of discharging the firearm (which would have subjected him to a ten-year mandatory minimum sentence). [*Id.*] The factual basis of the draft plea agreement contained admissions relating to the alleged battery and confinement of Ms. Sample. [*Id.* at ¶ 9(b).] Mr. Haslam did not accept the plea offer and the case proceeded towards trial, which was continued to September 23, 2013. [DE 41.]

On September 17, 2013, Mr. Howe emailed Mr. Schmid about a possible modification of the plea offer. [Gov't Ex. 2.] After a telephone discussion, Mr. Schmid emailed to Mr. Howe a revised plea offer. [Gov't Ex. 3.] The revised draft plea agreement contained the same offer to replace the 924(c) charge in the Indictment with a new 924(c) contained in an Information, so as to reduce the mandatory minimum sentence from thirty years to ten years. The revised draft omitted from the factual basis paragraph any admission of the alleged battery and confinement of Ms. Sample. [*Id.* at ¶ 9(b).] The parties agree that the omission of the alleged battery and confinement from the factual basis paragraph was done at the request of the Defendant, who was unwilling to admit to the allegations of battery and confinement. There is no evidence of any other communications that could be construed to suggest that the battery and confinement would not otherwise be considered.

Further negotiation reduced the 924(c) charge contained in the Information from a charge with a ten-year mandatory minimum to a charge with a five-year mandatory minimum, by removing from the Information any allegation that the firearm was brandished or discharged. [Gov't Exs. 4–5.] The parties' agreement to a sentence of not less than 15 years remained consistent throughout these various versions of the draft plea agreement. [Gov't Ex. 5.] Mr.

Haslam signed the last-proffered version of the plea agreement and, consistent with the factual basis contained in the plea agreement, was not required to admit at the change of plea hearing to the alleged battery and confinement of Ms. Sample.

Following the change of plea hearing, the Government submitted its version of the offense to the Probation Office for inclusion in the Presentence Report. [Gov't Ex. 7.] That version of the offense was included in the draft Presentence Report, which assessed a cross-reference to Guidelines § 2A4.1 for Unlawful Restraint. [Gov't Ex. 8.] In response to the draft Presentence Report, Mr. Howe filed objections, including objections to the application of the cross-reference, only arguing that the alleged battery and confinement did not occur as a factual matter and should not constitute relevant conduct as contemplated under the sentencing guidelines. [Gov't Ex. 9.] However, Mr. Howe did not allege at that time that the application of the cross-reference or the inclusion of the allegations regarding battery and confinement constituted a breach of the plea agreement or that the plea agreement barred their consideration. [*Id.*] Instead, Mr. Howe wrote: "In plea negotiation counsel for Defendant and the Assistant United States Attorney Schmid specifically deleted from the tendered plea offer any statements or reference to Laci Sample's [sic] relating to battery, threatening and/or confinement from the same. The reason being that he had in fact done none of those things to Laci Sample." [*Id.* at 15.] Additionally, Mr. Howe filed an initial sentencing memorandum on December 13, 2013, in which Mr. Howe addressed the alleged battery and confinement factually. [Gov't Ex. 10.] Mr. Howe did not contend in that filing that the Government's offer of that information constituted a breach of the plea agreement. [*Id.*] At the March 5 hearing, Mr. Howe agreed that the first time

6

the Defendant raised the issue of the alleged breach of the plea agreement was after the Court accepted the plea agreement during the December 20 sentencing hearing.

## II.  Discussion

Mr. Haslam argues that the Government's action in removing from the factual basis paragraph of the plea agreement any reference to the alleged battery and confinement of Ms. Sample was an implied agreement that such allegations were not to be offered at sentencing by the Government.  Thus, Mr. Haslam argues that by offering evidence of the alleged battery and confinement, the Government has breached the plea agreement and Mr. Haslam should be allowed to withdraw his guilty plea.

Rule 11 of the Federal Rules of Criminal Procedure governs the Court's acceptance of, and a defendant's ability to withdraw, a plea of guilty.  The rule states, in relevant part: "A defendant may withdraw a plea of guilty or nolo contendere: . . . (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d).  Here, the Court did not reject the plea agreement, so subsection (A) is not available to Mr. Haslam.  Therefore, unless Mr. Haslam can demonstrate a "fair and just reason" for withdrawing his plea of guilty, the plea will stand.

The Court begins its analysis by determining whether to admit and consider the extrinsic evidence presented by both parties during the March 5 hearing.

### A.  Consideration of Extrinsic Evidence

Plea agreements are contracts, and their content and meaning are determined according to ordinary contract principles.  *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992)

(finding plea agreement from District of Colorado did not bar subsequent prosecution in Western District of Wisconsin). Those ordinary contract principles, however, are "supplemented with a concern that the bargaining process not violate the defendant's right to fundamental fairness under the Due Process Clause." *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998) (finding plea agreement did not limit government's ability to present evidence of relevant conduct). Plea agreements are interpreted according to the parties' "reasonable expectations" and any ambiguities are construed against the government. *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011) (finding plea agreement did not limit government's ability to present evidence of relevant conduct); *Schilling*, 142 F.3d at 395.

Where a plea agreement is unambiguous, the agreement is interpreted according to its plain meaning. *O'Doherty*, 643 F.3d at 217. Where a plea agreement is ambiguous, "the essence of the particular agreement and the Government's conduct relating to its obligations in that case are determinative." *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009) (finding ambiguous plea agreement did not preclude motion under 18 U.S.C. § 3582(c)(2)); *Carnine v. United States*, 974 F.2d 924, 928–32 (7th Cir. 1992) (remanding for evidentiary hearing regarding plea negotiations).

As more fully described below, the Court believes that the plea agreement in this case is unambiguous. However, when faced with the argument that the government's conduct suggested or implied a promise not expressly stated in the written plea agreement, the Seventh Circuit has looked to extrinsic evidence of the plea negotiation in considering whether the plea agreement was breached. *See, e.g., Ingram*, 979 F.2d at 1185–86 (considering negotiations over language included in plea agreement to determine whether government made implied promise);

8

*O'Doherty*, 643 F.3d at 218 (considering parties' actions during plea colloquy, in addition to language of plea agreement, in finding government did not breach plea agreement by offering relevant conduct beyond what was admitted in factual basis of written plea agreement). Mr. Haslam raises a similar argument here. So, out of an abundance of caution and to best protect Mr. Haslam's due process rights, the Court will consider the extrinsic evidence offered by the parties. The Court notes, however, that whether or not it considers the extrinsic evidence regarding the plea negotiations, the end result remains the same: the Government has not committed a breach of the plea agreement.

### B. The Terms of the Written Plea Agreement

Starting with the terms of the written plea agreement, the written plea agreement contains no terms that would limit the Government's ability to present information of the alleged confinement and battery of Ms. Sample. Rather, the plea agreement expressly reserved to the Government "the right to tell the Sentencing Court the good things about him, and the bad things about him" and "the right to fully inform the Court of the nature and extent of his offense(s)." [DE 52 at ¶ 9(g).] While the Court has not yet finally determined whether the allegations of battery and confinement are sufficiently established so as to constitute relevant conduct for the purposes of sentencing Mr. Haslam, such conduct can at least be credibly argued to be a "bad thing" about Mr. Haslam and may well constitute relevant conduct under the Sentencing Guidelines.

To the extent that the failure to include any information regarding the alleged battery and confinement in the factual basis of the written plea agreement could be construed as a term of limitation in the plea agreement, it is not reasonable to conclude that the failure to include such

9

information in the factual basis forbids the Government from offering it as potentially relevant conduct. Simply put, the failure to include certain information in the factual basis of the plea agreement is not the same as an agreement not to present that information. To conclude otherwise would require taking the factual basis paragraph of a plea agreement far beyond its purpose—to determine whether a factual basis exists for a defendant's plea of guilty—and require the plea agreement to include all information potentially relevant to sentencing. This would be an absurd result and would conflict with Seventh Circuit decisions allowing the government to present relevant evidence beyond what information is included in the factual basis paragraph of a written plea agreement. *See O'Doherty*, 643 F.3d at 217; *Schilling*, 142 F.3d at 395.

Finally, the Court notes that the terms of the written plea agreement confirm there were no promises that were made to Mr. Haslam outside of the written plea agreement [DE 52 at ¶ 9(l)], which the Defendant acknowledged during the change of plea colloquy.

The Seventh Circuit's decision in *Schilling* is particularly on point with this case. In *Schilling*, the defendants pled guilty to defrauding the United States Department of the Treasury by failing to pay federal excise taxes on diesel fuel. *Schilling*, 142 F.3d at 392. The factual basis of the plea agreement admitted that the defendants had failed to pay excise taxes on 300,000 gallons of diesel fuel. *Id.* The plea agreement also contained a paragraph—similar to one in this case—that stated: "I understand that the United States of America reserves the right to tell the Court the good things about me and the bad things about me; the United States of America also reserves the right to present evidence which may affect my sentencing range; and the United States of America reserves the right to fully apprise the Court of the nature of the criminal

conduct." *Id.* at 392–93. At sentencing, the government presented evidence that the defendants had failed to pay taxes on far more than 300,000 gallons; the defendants objected that introduction of such information breached the plea agreement. The Seventh Circuit found that the admission of failing to pay taxes on only 300,000 gallons in the factual basis was not an implied promise to limit the material which would be presented by the government at sentencing. In making this determination, the Court relied on the fact that the government had explicitly reserved the right to "fully apprise" the sentencing court of the defendants' conduct. *Id.* at 396.

The same analysis compels the same decision in this case. The written plea agreement is unambiguous and expressly reserves to the Government the right to "fully inform" the Court of Mr. Haslam's offenses. The fact that the Government utilized this right to present evidence that at least arguably constitutes relevant conduct is not a breach under the clear terms of the plea agreement.

### C. Extrinsic Evidence of Plea Negotiations

Looking beyond the plain language of the plea agreement, Mr. Haslam argues that the Government's action in agreeing to remove from the factual basis of the written plea agreement any reference to the alleged battery and confinement of Ms. Sample was an implied agreement by the Government not to offer the allegations as relevant conduct at sentencing.

As discussed above, the Government is not required to include all evidence potentially relevant at sentencing within the factual basis of the plea agreement. Rather, the factual basis paragraph of the plea agreement is designed to do what its name suggests: ensure there is an adequate factual basis to determine that a defendant is guilty of the offense or offenses to which he intends to plead guilty. In this case, the Government agreed to remove from the factual basis

paragraph any admission to the alleged battery and confinement of Ms. Sample because that information was not necessary to assure the adequacy of Mr. Haslam's plea. Neither battery nor confinement is an essential element of any of the crimes to which the Court has accepted Mr. Haslam's plea of guilty.

It is not a fair interpretation of the parties' plea negotiations to say that, by agreeing to remove that information from the plea agreement, the Government was agreeing that the information was not relevant conduct at sentencing. Relevant conduct is a substantially broader concept than information which proves the Defendant's guilt of the essential elements of an offense. *See* Sentencing Guidelines § 1B1.3. Specifically, relevant conduct can include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully cause by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Sentencing Guidelines § 1B1.3(a)(1). Again, the Court notes that it has not yet determined whether the alleged battery and confinement constitute relevant conduct in this case. However, given the vastly different scope of a factual basis for a guilty plea and relevant conduct at sentencing, the Government's actions in agreeing to omit information from the factual basis of a plea agreement cannot be fairly interpreted as an implicit agreement to bar the conduct as relevant conduct at sentencing. Instead, removing the language from the factual basis paragraph simply removed any admission by Mr. Haslam to those particular acts, providing him an opportunity to contest their accuracy or whether they constituted relevant conduct. Mr. Haslam has availed himself of that recourse, both in his objections to the Presentence Report, at the evidentiary portions of the sentencing hearing, and in the briefing that followed.

Mr. Haslam further argues that if the evidence of the alleged battery and confinement were admitted and credited by the Court, then Mr. Haslam could have arguably "brandished" a firearm. The Defendant argues that this would violate the plea agreement, since the parties agreed to charge in the Information not that Mr. Haslam brandished a firearm (which would be subject to a mandatory minimum sentence of seven years), but rather that he possessed the firearm in furtherance of a drug trafficking crime (subjecting him to a mandatory minimum sentence of five years).

The Defendant again confuses two separate issues. Whether or not the Court finds at sentencing that Mr. Haslam in fact battered and confined Ms. Sample—and brandished a firearm in the process—cannot possibly result in a higher mandatory minimum sentence to Mr. Haslam. Rather, any fact that increases a mandatory minimum sentence for a crime must be either proven to a jury beyond a reasonable doubt or admitted by the defendant. *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013). Since Mr. Haslam did not admit in the plea agreement or at the change of plea hearing to having brandished a firearm, the Court is prohibited from subjecting Mr. Haslam to a seven-year mandatory minimum term. Instead, as the Presentence Report correctly notes, Mr. Haslam is subject to a five-year mandatory minimum sentence in connection with his 924(c) charge. Accordingly, any evidence of brandishing is not inconsistent with the terms of the plea agreement or the penalties stated within the plea agreement and so the Court finds no breach of the plea agreement in this respect.

In addition, the Government notes that Mr. Haslam has been aware that the Government was going to seek to introduce the evidence of Ms. Sample's confinement as relevant conduct since the day of the change of plea hearing. Specifically, the Government has correctly noted

that the Government's initial statement of the offense conduct (submitted hours after the change of plea hearing), the initial draft Presentence Report, and the final Presentence Report all contained the factual description of Ms. Sample's alleged confinement and its related sentencing enhancements. When each of those documents were served on Mr. Haslam, the Court had not yet accepted Mr. Haslam's plea of guilty. Accordingly, he had an unqualified right to withdraw his plea of guilty, had he chosen to do so. Fed. R. Crim. P. 11(d)(1). The Defendant did not do so. This failure to withdraw his plea in a timely manner diminishes the credibility of the Defendant's proffered reasons for now attempting to withdraw his plea of guilty and provides an additional reason to find that the Defendant has no "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

### III. Conclusion

Mr. Haslam presents only one credible argument for why he should be allowed to withdraw his plea of guilty: the Government's purported breach of the plea agreement.[3] The Court finds no breach of the plea agreement in this case. Accordingly, the Court **DENIES** Mr. Haslam's motion to withdraw his plea of guilty. [DE 87.]

SO ORDERED.

Entered: May 19, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[3] In the waning moments of the March 5 hearing, the Defendant proffered a second reason why he should be allowed to withdraw his plea of guilty, namely that Mr. Haslam lied during the change of plea hearing when he stated that he understood the terms of the plea agreement. Based on the circumstances under which the Defendant raised this argument, the Court gives this argument very little credence. Additionally, the Court notes that Mr. Haslam was under oath during the change of plea hearing and such testimony "has a presumption of verity." *United States v. Groll*, 952 F.2d 755, 758 (7th Cir. 1993). Accordingly, "the district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing." *Id.*